UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GEROD MOBLEY a/k/a SHAMMAR SMITH,

                Plaintiff,

        - against -

MR. GEROD OGARA, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM and ORDER**

02 CV 6605 (DRH) (MLO)

**A P P E A R A N C E S:**

**GEROD MOBLEY**
Plaintiff Pro Se
No. 02R2292
Cape Vincent Correctional Facility
Route 12E
Post Office Box 739
Cape Vincent, New York 13618

**MICHAEL A. CARDOZO**
Attorney for Defendants DOC and Gerod O'Gara
100 Church Street
New York, N.Y. 10001
By: Seth D. Eichenholtz, Esq.

**HURLEY, District Judge:**

        Presently before the Court is the motion by defendants New York City Department of Corrections ("DOC") and Gerod O'Gara ("O'Gara") (collectively, "Defendants") for an Order dismissing the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, the motion is denied in part and granted in part.

## **BACKGROUND**

        Plaintiff Gerod Mobley ("Plaintiff") commenced this action *pro se* on November

25, 2002 in the United States District Court for the Southern District of New York. Plaintiff's case was subsequently transferred to this Court and on March 26, 2003, Plaintiff filed an Amended Complaint. By Memorandum of Decision and Order dated August 11, 2004, the Court granted Defendants' motion to dismiss the Amended Complaint based upon Plaintiff's failure to allege exhaustion of administrative remedies and granted Plaintiff leave to file a Second Amended Complaint. On October 5, 2004, Plaintiff filed a Second Amended Complaint.

Plaintiff alleges that he was incarcerated in the George R. Vierno Center at Riker's Island, also known as "the Beacon," which is operated by the DOC. (Second Am. Compl. ¶ 4.) Sometime between August 14, 2000 and August 25, 2000, Plaintiff allegedly got into an altercation with an unnamed inmate who Plaintiff alleges is of Hispanic nationality. (*Id.* ¶ 7.) As a result of this fight, the unnamed inmate was transferred to a different housing unit to avoid a recurrence of the altercation. (*Id.* ¶ 8.) Plaintiff, however, remained in the same housing unit, allegedly with friends of the unnamed inmate. (*Id.*) Plaintiff alleges that x-rays were taken of his hip on August 26, 2000, and that they revealed no fracture. (*Id.* ¶ 10.)

On an unspecified date after the first fight, Plaintiff alleges that he was attacked by other inmates who were friends of the inmate with whom Plaintiff had his original fight. (*Id.* ¶ 11.) Although Plaintiff claims that the DOC Emergency Response Team "stopped the attack," (*id.* ¶ 12), he further alleges that untrained and unsupervised DOC employees tried to pick him up and with the assistance of other inmates, moved Plaintiff down approximately fifteen to twenty steps to a stretcher, causing Plaintiff to suffer further injuries. (*Id.* ¶¶ 13-14.) Plaintiff admits that "the John Doe Doctors Ordered, and the Corrections Officers called an ambulance, but it did not arrive until 8 hours later, and the Plaintiff was in severe pain the entire time." (*Id.*

¶ 15.)

As best the Court can decipher from his pleading, Plaintiff was treated at East Elmhurst Hospital on November 30, 2000, where doctors reviewed x-rays of Plaintiff's hip and called in an orthopedic surgeon. (*Id.* ¶ 16.) The next day, on December 1, 2000, Plaintiff underwent surgery, during which he allegedly lost a great deal of blood requiring a blood transfusion. (*Id.*) Plaintiff stayed in the hospital for four days and was discharged back to the Riker's Island Medical Unit on December 5, 2000. (*Id.* ¶ 17.) Plaintiff claims he was placed in a medical housing unit where he stayed wheelchair bound for six days until December 11, 2000, when he released from DOC custody to "go home." (*Id.* ¶ 18.)

Although Plaintiff's original and amended complaints did not allege that he filed a grievance during his time at Riker's Island, Plaintiff now alleges that he wrote two complaints to the "grievance office" on his third day in the medical unit but never received a response back. (*Id.* ¶ 19.)

Plaintiff asserts the following claims: (1) O'Gara violated Plaintiff's Eighth Amendment right by failing to oversee "the proper execution of the rules" by his subordinates, including "being deliberately indifferent to [Plaintiff's] [s]erious [m]edical needs"; (2) Defendants John and Jane Doe Doctors and Nurses in the Medical Department at the DOC violated Plaintiff's Eighth Amendment right by misdiagnosing and refusing to provide Plaintiff with adequate medical care; and (3) defendant "Vismole" and John and Jane Doe Corrections Officers violated Plaintiff's Eighth Amendment right by providing medical services and opinions although they were not trained to do so; and (4) all defendants violated various state law torts and general Constitutional guarantees. Defendants move to dismiss the Second Amended

Complaint in its entirety, arguing that Plaintiff failed to exhaust his administrative remedies and that he fails to state a claim as a matter of law. The Court will address Defendants' arguments in turn.

## DISCUSSION

### I. *Applicable Law and Legal Standards*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). Finally, when the plaintiff proceeds pro se, as in this case, the Court is obliged to construe his pleadings liberally. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

### II. *Exhaustion of Administrative Remedies*

#### A. *Applicable Legal Standards*

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to "all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit set forth a three-part inquiry that courts should use when an inmate "plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." *Id.* at 686. First, the Court must investigate "whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citation omitted) Next, the Court should "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Finally, if the Court finds that administrative remedies were available and that there are no reasons why defendants have forfeited or should be estopped from raising a non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Id.* (citations and internal quotation marks omitted).

To satisfy the PLRA, an inmate must comply with the specific administrative procedures provided to him. The DOC has a well-established five-step administrative inmate grievance program ("IGP") to resolve inmate grievances. *See, e.g.*, *Williams v. City of N.Y.*, No. 03 Civ. 5342, 2005 WL 2862007, at *9 (S.D.N.Y. Nov. 1, 2005). This process requires the

inmate to:

> (1) file a complaint with the Inmate Grievance Review Committee ("IRGC") for informal resolution within five working days; (2) request a formal hearing before the IRGC, with a recommendation to be made within three working days; (3) appeal to the facility warden, who must render a decision within five working days; (4) appeal to the NYCDOC Central Officer Review Committee ("CORC"), who must issue a recommendation within twenty working days; and (5) appeal to the Board of Correction, who must issue a recommendation to the Commissioner within twenty working days. The Commissioner must issue a final decision within ten working days of receipt of that recommendation.

*Id.* at *10; (*see also* Defs.' Notice of Mot. Ex. D.) Courts have interpreted the PLRA to require complete exhaustion. Thus, an inmate's remedies are not deemed exhausted until he has completed all five steps of the IGP. *See Williams*, 2005 WL 2862007, at *10; *Leacock v. New York City Health Hosp. Corp.*, No. 03 Civ. 5440, 2005 WL 483363, at *4 (S.D.N.Y. Mar. 1, 2005), *supplemented by Leacock v. New York City Health Hosp. Corp.*, No. 03 Civ. 5440, 2005 WL 1027152 (S.D.N.Y. May 4, 2005). This is true even if an inmate files a grievance and receives no response; he or she is still obligated to exhaust appeals. *See Williams*, 2005 WL 2862007, at *10; *Leacock*, 2005 WL 483363, at *4.

### B. *Application to the Instant Case*

Here, the Second Amended Complaint alleges that the incident that is the subject of this lawsuit occurred on or about November 30, 2000, and that Plaintiff was thereafter transferred to Elmhurst Hospital. (Second. Am. Compl. ¶ 16.) Plaintiff further alleges that he underwent surgery on December 1, 2000, and stayed in the hospital for four more days until he was discharged back to Riker's Island on December 5, 2000. (*Id.* ¶ 17.) On his third day back at Riker's Island, Plaintiff allegedly wrote two complaints to the grievance office, (*id.* ¶ 19), and

was subsequently released to "go home" on December 11, 2000. (*Id.* ¶ 18.)

A review of the Court file reveals that Plaintiff was a confined prisoner at the time he filed this lawsuit on November 25, 2002, and, therefore, the exhaustion requirements of the PLRA apply. *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004). Accepting Plaintiff's allegations as true, as this Court is required to do, Plaintiff filed two complaints with the Grievance Office[1] and was then released from DOC custody just days later. Thus, although Plaintiff fails to allege that he completed the grievance process, these procedures were no longer available to him to exhaust once he was released just days later.[2] This finding, however, does not address whether Plaintiff, who was incarcerated at the time he filed this lawsuit and who remains presently incarcerated, albeit at a different facility, was ever subsequently returned to city custody such that his administrative remedies would have become available once again. *See Berry*, 366 F.3d at 88 (finding that plaintiff's administrative remedies were available to him during three separate periods of confinement; "[t]he fact that his two reincarcerations were for

---

[1] Defendants argue that Plaintiff's allegation that he filed two complaints with the grievance office should be disregarded as inconsistent with both prior pleadings and various letters written by Plaintiff to the Court. (*See* Defs.' Mem. at 7.) The Court declines to do so. As an initial matter, the present motion is directed towards Plaintiff's Second Amended Complaint and it is that pleading which is before the Court. Plaintiff's prior pleadings have no bearing on the Court's determination, especially considering that the reason the Court granted Plaintiff leave to amend was so that Plaintiff could correct deficiencies in his former pleading, i.e., his failure to allege that he exhausted administrative remedies. Second, any letters Plaintiff wrote to the Court are not properly considered on a Rule 12(b)(6) motion.

[2] This case is distinguishable from *Burns v. Moore*, No. 99 Civ. 0966, 2002 WL 91607 (S.D.N.Y. Jan. 24, 2002), a case cited by Defendants. In *Burns*, the court dismissed plaintiff's action with prejudice for failure to exhaust administrative remedies prior to his transfer from the DOC to another facility. *Id.* at *7. In that case, however, it was undisputed that plaintiff never filed *any* grievances while in DOC custody and that he remained in DOC custody for two months prior to his transfer. *Id.* at *6. Here, Plaintiff alleges that he did file a complaint with the grievance office and that he was released just days later.

offenses different from the one for which he was confined when his grievances arose does not excuse failure to exhaust. As long as he was within the custody of the agency against which he had grievances, the NYCDOC, he was required to use available grievance procedures."). Absent any information on this issue, and given the present procedural posture, to wit, a Rule 12(b)(6) motion, the Court cannot state as a matter of law that the Second Amended Complaint should be dismissed for failure to exhaust administrative remedies pursuant to the PLRA. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d Cir. 2004) ("On remand, the district court is directed to consider Ziemba's claim that estoppel bars the State's assertion of the exhaustion defense. Because such consideration will require the court to look beyond the pleadings and the documents attached to the pleadings, the district court must allow factual development and address the estoppel claim at the summary judgment stage."). Accordingly, Defendants' motion to dismiss on this ground is denied.

## III. *Plaintiff's Claims*

Essentially, Plaintiff asserts two different claims against Defendants. First, he alleges a violation of his civil rights resulting from his continued housing at the Beacon. Second, he claims that Defendants deprived him of adequate medical care in violation of the Eighth Amendment. The Court will address each of Plaintiff's claims in turn.

### A. *Continued Housing at the Beacon*

Plaintiff alleges that after his fight with a Hispanic inmate, the Defendants violated his civil rights by putting him back in the same housing unit where friends of this inmate allegedly resided "knowing there would be repercussions because the matter was not resolved." (Second Am. Compl. ¶ 8.) Plaintiff concedes, however, that Defendants moved the

-8-

Hispanic inmate to a different housing unit. (*Id.*)

To state a claim under Section 1983, Plaintiff must allege that a person acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution, laws or treaties of the United States. *See* 42 U.S.C. § 1983. For a prison official to be liable under Section 1983 for the injuries a prisoner suffers at the hands of another prisoner, the plaintiff must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the prison official displayed "deliberate indifference" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). Establishing deliberate indifference requires a showing that a substantial risk to inmate safety actually existed and that the offending officers knew of, and consciously disregarded the risk. *Farmer*, 511 U.S. at 842; *Hayes*, 84 F.3d at 620.

Here, charitably read, Plaintiff does not set forth a claim for deliberate indifference to his safety as a result of the second fight between himself and other inmates. Plaintiff concedes that after his first fight with the Hispanic inmate, the latter was removed from the facility out of concern for their mutual safety. (Second Am. Compl. ¶ 8.) Plaintiff claims, however, that Defendants disregarded his safety by keeping Plaintiff in the facility that was the site of the initial fight, where allegedly, Defendants should have known that other inmates who were friends of the Hispanic inmate were housed. (*Id.*) Accepting Plaintiff's allegations as true, even assuming Defendants knew that friends of the Hispanic inmate were housed in Plaintiff's facility, there is nothing in the allegations to suggest that Defendants "ha[d] knowledge that [Plaintiff] face[d] a substantial risk of serious harm." *Hayes*, 84 F.3d at 620. In this regard, there is no indication that Defendants should have been aware that these friends were dangerous

or that they were planning to attack Plaintiff. Moreover, there is nothing in the Second Amended Complaint which indicates that Defendants "disregard[ed] [a] risk by failing to take reasonable measures to abate the harm." *Id.* To the contrary, Defendants separated Plaintiff and the Hispanic inmate. Moreover, Plaintiff alleges that when he got into the second fight, DOC employees intervened and "stopped the attack." (*Id.* ¶ 12.) These allegations belie Plaintiff's claim that Defendants failed to take reasonable steps to minimize the risk of harm to Plaintiff. Accordingly, the Court finds that Plaintiff has failed to state a claim under Section 1983 based upon his allegations of continued housing at the Beacon.

### B. *Plaintiff's Claims for Denial of Proper Medical Care*

Plaintiff alleges that the DOC violated his rights under the Eighth Amendment by denying him proper medical care. More specifically, he claims that after he was attacked by other inmates, unnamed corrections officers tried to pick him up and move him down 15-20 stairs, thereby exacerbating his injuries. (Second Am. Compl. ¶ 13.) He further alleges that "the John Doe doctors ordered, and the Corrections Officers called an ambulance, but it did not arrive until 8 hours later, and the Plaintiff was in severe pain [the] entire time." (*Id.* ¶ 15.)

The Second Circuit recently set forth the standard to be applied in analyzing claims for improper medical care under the Eighth Amendment:

> To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove deliberate indifference to [his] serious medical needs. A prisoner must satisfy two requirements-one objective and one subjective-in order to prevail on such a deliberate indifference claim. First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious-that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain. Second, the prisoner must prove that the charged official

> acted with a sufficiently culpable state of mind[.] This requires
> that the prisoner prove that the charged official knows of and
> disregards an excessive risk to inmate health or safety; the official
> must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must
> also draw the inference.

*Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citations and internal quotation marks omitted). Here, liberally construed, the Second Amended Complaint alleges both the objective and subjective elements of the deliberate indifference standard. As to the objective component, Plaintiff alleges that his injuries caused him "severe pain" for the entirety of the eight hours that he was left waiting for an ambulance to arrive, thereby adequately alleging that the claimed deprivation was "sufficiently serious." (Second Am. Compl. ¶ 15.) As to the subjective component, Plaintiff alleges that he could not get up or move his leg. (*Id.* ¶ 22.) Taking Plaintiff's allegations as true, it should have been apparent to the DOC employees on the scene that Plaintiff's health may have been at "excessive risk." This conclusion is buttressed by the later allegation that once Plaintiff arrived at the hospital, he underwent surgery, requiring a blood transfusion. (*Id.* ¶ 17.)

Defendants argue that because Plaintiff "admits that the DOC staff promptly called an ambulance," (Defs' Mem. at 12), Plaintiff's allegations are insufficient to state a Constitutional violation as a matter of law. The Court disagrees. Read in the most favorable light, the Court cannot state as a matter of law that Plaintiff could prove no set of facts that would rise to the level of deliberate indifference. For example, given the fact that Plaintiff had to wait eight hours for an ambulance to arrive, perhaps the DOC employee who called the ambulance failed to convey the seriousness of the situation and/or failed to place a follow up phone call. Accordingly, the Court finds that Plaintiff has sufficiently alleged a violation under

the Eighth Amendment based upon deprivation of proper medical care.

### C. *Plaintiff's Claims Against the DOC*

Having found that Plaintiff's pleading states a cognizable claim, the next question is whether this claim is properly asserted against the named Defendants. Although Plaintiff's claims are asserted against various defendants, the caption merely lists "Mr. Gerod Oraga [sic], et[] al." To date, other than Nassau County, which was dismissed from this action on April 28, 2005 pursuant to a request by Plaintiff, only the DOC and O'Gara have appeared in this action. To the extent Plaintiff asserts claims against the DOC, these claims must be dismissed as a matter of law. It is well established that the DOC is a non-suable entity. *See, e.g.*, *Echevarria v. Dep't of Correctional Serv.,* 48 F. Supp. 2d 388, 391 (S.D.N.Y.1999) (citing cases); *Richardson v. Castro*, No. 97 CV 3772, 1998 WL 205414, at *6 (E.D.N.Y. Apr. 24, 1998) (citation omitted). Chapter 17, § 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396. No such exception exists for the DOC. *Echevarria,* 48 F. Supp. 2d at 391 (citing cases). Therefore, Defendants' motion to dismiss with respect to claims against the DOC is granted. Nevertheless, even if the Court treats Plaintiff's claims as a complaint against the City of New York (the "City"), Plaintiff's claims warrant dismissal.

In order to state a claim against a municipality under Section 1983, Plaintiff must allege that a deprivation of his constitutional rights was caused by an official policy or custom of the municipality. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). In addition, the Supreme Court has "consistently refused to hold municipalities liable under a theory of

respondeat superior." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Thus, "a municipality may not be held liable under [section] 1983 solely because it employs a tortfeasor." Id.

Here, Plaintiff has not alleged any facts which demonstrate or even suggest that the alleged deprivation of his constitutional rights was caused by an official policy or custom of the City. For example, Plaintiff does not allege any facts which would suggest that the City was deliberately indifferent to its employees' training needs[3] nor does he reference the existence of a widespread policy to deny prisoners adequate medical care. Instead, the Second Amended Complaint only discusses Plaintiff's individual experience with the DOC.

In *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), the Supreme Court held that, under certain circumstances, municipal liability may be imposed based upon a single decision or action by a municipal policymaker. *Id.* at 481. The Court made clear, however, that municipal liability attaches only when the decision maker possesses "final authority" to establish municipal policy with respect to the action ordered. *Id.* Where, as here, Plaintiff alleges that his rights were deprived as a result of a single incident involving lower-level municipal employees, the inquiry focuses on "on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Because Plaintiff has not alleged, and nothing in his pleading suggests, that any of the claimed wrongful acts or omissions on the part of City employees were attributable in any way to the act or omission an official with policy

---

[3] *See Neighbour v. Covert*, 68 F.3d 1508, 1512 (2d Cir. 1995) (stating that for liability to attach to a municipality based upon a failure to train, the failure to train must rise to the level of "deliberate indifference.").

making authority or to a municipal policy or custom, any claims against the City are hereby dismissed. However, because the Second Circuit has repeatedly held that "when addressing a pro se complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (citation and internal quotation marks omitted), the Court grants Plaintiff leave to amend with regard to his claims against the City.[4]

## IV.    Plaintiff's Claims Against O'Gara

It is well settled that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995). Thus, "[t]he rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Id.* (citation and internal quotation omitted).

Here, the Second Amended Complaint alleges that O'Gara, as Warden of the Beacon, "is responsible for the entire inmate population, and the proper execution of the rules and regulations and procedures are followed by the subordinate employees under his supervision, including, but not limited to contr[a]ctual workers with the Department of Correctional Services in his facility." (Second Am. Compl. ¶ 1.) It further alleges that O'Gara

---

[4] Although the Court has already afforded Plaintiff one opportunity to amend his pleading, permission to amend was limited to Plaintiff's claims of exhaustion of administrative remedies and did not address the merits of Plaintiff's claims. (*See* Aug. 11, 2004 Mem. of Decision and Order.)

failed to "oversee and insure the proper execution" of these rules, resulting in the deliberate indifference to Plaintiff's "serious medical needs." (*See id.* ¶ 3 under "Claims for Relief".)

On its face, the pleading clearly fails to allege that O'Gara was directly involved in the alleged unlawful conduct. However, the Second Circuit has recognized that a defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways:

> The defendant may have directly participated in the infraction. . . . A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. . . . A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. . . . Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. . . . In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference " to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place.

*Wright*, 21 F.3d at 501 (citations omitted); *see also Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (same).

The Court finds that Plaintiff's allegations against O'Gara, while hardly plentiful, are sufficient to survive the instant motion to dismiss, and indeed, may be all that is possible at the pleading stage. Although the Court recognizes that a supervisor may not be held liable under a theory of respondeat superior, the Court is also cognizant of the Second Circuit's admonition against dismissing claims against supervisors at this early stage in the litigation:

> After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, but such dismissal is premature where the opportunity to identify those involved has not yet been

> accorded. Indeed, in some instances, their identification might
> produce evidence from them that they acted at the supervisor's
> instruction, thus putting in issue the supervisor's denial of personal
> involvement. In this case, [plaintiff] was afforded an opportunity
> for discovery, and he simply failed to realize until after the
> summary judgment motion was filed that he had failed to name the
> appropriate defendant(s). Nonetheless, his failure is
> understandable under the circumstances. Though a court need not
> act as an advocate for pro se litigants, in pro se cases there is a
> greater burden and a correlative greater responsibility upon the
> district court to insure that constitutional deprivations are
> redressed and that justice is done. We therefore hold that when a
> pro se plaintiff brings a colorable claim against supervisory
> personnel, and those supervisory personnel respond with a
> dispositive motion grounded in the plaintiff's failure to identify the
> individuals who were personally involved, under circumstances in
> which the plaintiff would not be expected to have that knowledge,
> dismissal should not occur without an opportunity for additional discovery.

*Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998) (citations and internal quotation marks omitted).

In light of the Second Circuit's directive in *Davis*, the Court need not consider at this stage whether Plaintiff will ultimately succeed in proving the personal involvement of O'Gara, but only whether he has made sufficient allegations to withstand Defendants' motion to dismiss. The Court concludes that he has done so and, accordingly, the motion to dismiss for lack of personal involvement as to O'Gara is denied. However, because it is unclear from Plaintiff's Second Amended Complaint which Defendants Plaintiff is asserting claims against, Plaintiff is hereby granted leave to amend for the limited purpose of listing all defendants in the caption, including any John or Jane Doe Corrections Officers or DOC medical staff. In drafting his amended pleading, Plaintiff shall be mindful that all claims arising out of his continued housing at the Beacon have been dismissed, as have all claims against the DOC.

## CONCLUSION

For all of the above reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion is granted to the extent that Plaintiff's Section 1983 claims arising out of his continued housing at the Beacon are dismissed, as well as all claims against the DOC. Defendants' motion is denied to the extent: (1) Defendants sought dismissal of the pleading based on failure to exhaust administrative remedies; (2) Defendants sought dismissal of Plaintiff's Section 1983 claims based upon alleged deprivation of adequate medical care; and (3) Defendants sought dismissal of all claims against O'Gara. Plaintiff may file an amended complaint within thirty days of the date of this Order. Failure to address the pleading concerns enunciated in this Order will result in dismissal of those claims with prejudice.

**SO ORDERED.**

Dated: Central Islip, New York
January 23, 2006

/s_____
DENIS R. HURLEY,
United States District Judge